UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARCO A. MICHALSKI,
    *Plaintiff*,

v.

RICARDO RUIZ and SAMUEL
BURKOWITZ,
    *Defendants*.

No. 3:17-cv-01516 (VAB)

**INITIAL REVIEW ORDER**

Marco Michalski ("Plaintiff"), incarcerated at the Osborn Correctional Institution and proceeding *pro se*, filed a civil Complaint under 42 U.S.C. § 1983, alleging that Drs. Ricardo Ruiz and Samuel Berkowitz (collectively "Defendants") failed to provide him with medical treatment in violation of his rights under the Eighth Amendment to the U.S. Constitution. Mr. Michalski has also moved for service and filed two motions seeking review.

For the reasons that follow, the Complaint will be **DISMISSED** in part and the motions are **DENIED**.

## I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Mr. Michalski describes Dr. Ruiz as a physician stationed at Cheshire Correctional Institution and Dr. Berkowitz as a podiatrist employed by the University of Connecticut Health Center. Mr. Michalski alleges that he suffers from serious medical needs and Defendants were deliberately indifferent to those needs from September 2016 to September 2017.

### A. Factual Allegations

Mr. Michalski alleges having been born with two clubfeet. *See* Compl. ¶ 5ECF No. 1. As a result of this condition, Mr. Michalski claims that he developed severe pronation of both feet.

1

*Id.* In 2000, his "arches dropped" and he has been flat-footed ever since. *Id.* ¶ 6. This condition has allegedly caused him pain and discomfort. *Id.* A physician allegedly prescribed arch supports and strengthening and conditioning exercises. *Id.* ¶ 7. Mr. Michalski maintains that this treatment did not alleviate the pain caused by the condition. *Id.* ¶¶ 8, 12.

In 2001, a physician allegedly diagnosed Mr. Michalski as suffering from "significant pronation deformity" and indicated that the condition might require "tendon transfers and fusions." *Id.* ¶¶ 8–9. The Complaint alleges that Mr. Michalski did not undergo any surgical procedures to treat his condition. *See id.* ¶¶ 9–10.

In 2002, a physician allegedly prescribed steroid injections and casting of Mr. Michalski's ankles. *Id.* ¶ 10. This treatment as well as good quality footwear and physical therapy allegedly proved to be effective in treating the pain and seized tendons caused by Mr. Michalski's condition. *Id.* ¶ 11. Mr. Michalski continued to wear and purchase good quality footwear every month until his incarceration in April 2013. *Id.* ¶13.

At Cheshire Correctional Institution ("Cheshire"), Mr. Michalski alleges he could only purchase one pair of low quality footwear every six months. *Id.* ¶ 14. The footwear allegedly had no arch support and the soles wore down quickly. *Id.* ¶ 15. During his confinement, Mr. Michalski asserts that he jumped on and off of high bunk beds and engaged in high impact exercise on concrete floors. *Id.* ¶ 16.

In September 2016, Mr. Michalski maintains that his feet started to hurt and feel "very tight." *Id.* ¶ 18. In response to Mr. Michalski's complaints of foot pain, a medical staff member allegedly examined him and scheduled him to see a physician. *Id.* ¶ 19. A few weeks later, a medical staff member allegedly informed Mr. Michalski that he was scheduled to see Dr. Ruiz at the end of November 2016. *Id.* ¶ 20. On an unidentified day before the end of November 2016,

2

the Complaint asserts that Mr. Michalski's feet became swollen and he could not walk. *Id.* ¶ 22. He allegedly submitted a request to be seen in the medical department and was not see by Dr. Ruiz at the end of November. *Id.* ¶¶ 22–23.

Mr. Michalski allegedly submitted several requests to be seen in the medical department. *Id.* On December 16, 2016, a nurse allegedly examined Mr. Michalski and indicated that he had an appointment scheduled with Dr. Ruiz at some point before Christmas. *Id.* Dr. Ruiz allegedly did not examine Mr. Michalski before Christmas. Mr. Michalski asserts that on January 2, 2017, Mr. Michalski submitted a request seeking an appointment with Dr. Ruiz because he was suffering from severe foot pain. *See id.* ¶ 24.

On January 19, 2017, Dr. Ruiz allegedly met with Mr. Michalski to discuss blood test results. *Id.* ¶ 26. The Complaint maintains that Dr. Ruiz would not listen to Mr. Michalsk's complaints of pain, engage in an examination of Mr. Michalski's feet, or offer any assessment of or treatment for his painful conditions. *Id.* ¶¶ 26–27. Dr. Ruiz allegedly did mention that he would try to get Mr. Michalski arch supports. *Id.* ¶ 26. Mr. Michalski alleges that Dr. Ruiz took no steps to obtain arch supports for Mr. Michalski. *Id.*

In February 2017, Mr. Michalski allegedly submitted a health services request for treatment for the severe pain in his feet. *Id.* ¶ 29. On March 1, 2017, Mr. Michalski allegedly met with Dr. Ruiz and explained the history of his foot conditions. *Id.* ¶ 30. Dr. Ruiz allegedly submitted a request for shoe inserts to the Utilization Review Committee ("URC"). *Id.*

The Complaint alleges that, at the time Mr. Michalski was measured for the shoe inserts, Dr. Ruiz indicated that Mr. Michalski's foot size was 13 ½ and that he should be wearing a size 15 shoe to accommodate the inserts. *Id.* ¶ 31. Although Mr. Michalski allegedly explained that he had worn a size 12 shoe all is life, Dr. Ruiz allegedly instructed him to buy a size 15 shoe

3

from the commissary and ordered size 15 inserts for Mr. Michalski. *Id.* Allegedly, Mr. Michalski received his size 15 shoe inserts on March 23, 2017. *Id.* ¶ 32.

Because the size 15 inserts were allegedly too large for Mr. Michalski's size 12 shoes, he allegedly asked a medical staff member to cut the inserts to fit his size 12 shoes. *Id.* ¶ 32. On March 24, 2017, a medical staff member allegedly summoned Mr. Michalski to the medical department to have his inserts cut to fit his size 12 shoes. *Id.* ¶ 33. Dr. Ruiz was allegedly present in the medical department and allegedly continued to insist that Mr. Michalski buy size 15 shoes to fit the inserts. *Id.* Mr. Michalski allegedly explained that if the shoes did not fit snuggly around his feet, the inserts would slide around and provide him with no benefit. *Id.* The Complaint asserts that Dr. Ruiz accused Mr. Malchiski of lying about the size of his feet. *Id.* ¶ 34.

On March 28, 2017, Mr. Michalski allegedly submitted a request to be seen in the medical department because his feet were painful and the shoe inserts were not working to alleviate the pain. *Id.* ¶ 36. He alleges that the inserts were made of foam and had no arch support. *Id.* ¶ 36. A nurse allegedly examined Mr. Michalski on March 29, 2017, and put him on a list to see a doctor. *Id.* ¶ 37. On March 30, 2017, Mr. Michalski allegedly filed a health services review seeking treatment from a specialist for his painful foot conditions. *Id.* ¶ 38. On April 22, 2017, Mr. Michalski allegedly filed another health services review complaining that he could not walk due to his painful foot conditions. *Id.* ¶ 39.

The Complaint alleges that Dr. Ruiz examined Mr. Michalski on April 26, 2017. *Id.* ¶ 40. Later that day, Dr. Ruiz allegedly submitted a request to the URC seeking a referral to a podiatrist for possible steroid injections. *Id.* Mr. Michalski felt that weight-bearing x-rays were

necessary. *Id.* ¶ 41. Dr. Ruiz alegeldy did not submit an order that Mr. Michalski undergo x-rays of his feet. *Id.*

On May 2, 2017, Mr. Michalski alleges that his feet were still painful and swollen and he could not walk or put pressure on them. *Id.* ¶ 42. He claims that he was not sleeping or eating because of the pain in his feet. *Id.*

On May 8, 2017, a medical staff member allegedly informed Mr. Michalski that the URC had approved the request that he be seen by a podiatrist. *Id.* ¶ 43. On June 5, 2017, Mr. Michalski allegedly met with Dr. Berkowitz, who Mr. Michalski claims is a podiatrist. *Id.* ¶ 45. Dr. Berkowitz allegedly informed Mr. Michalski that he would not give Mr. Michalski a sneaker pass. *See id.* ¶ 46. Dr. Berkowitz allegedly did not examine Mr. Michalski, review his medical records, or discuss or assess his symptoms. *Id.* ¶ 48. Instead, Mr. Michalski alleges that Dr. Berkowitz recommended that Mr. Michalski undergo steroid injections. *Id.* at 34. When Mr. Michalski allegedly asked whether Dr. Berkowitz was going to examine him before giving him an injection, Dr. Berkowitz allegedly asked Mr. Michaski to rate his level of pain. *Id.* ¶ 49. Mr. Michalski allegedly indicated a present pain level of five and that he sometimes experienced a pain level of ten. *Id.* In response, Dr. Berkowitz allegedly stated that steroid injections were not warranted and there was no other treatment that he could provide. *Id.* Dr. Berkowitz allegedly suggested that Mr. Michalski wait to submit a request to be seen for steroid injections until he was in so much pain that he could not walk. *Id.* ¶ 50.

On June 8, 2017, Mr. Michalski allegedly participated in a pre-trial hearing on a state habeas petition seeking relief for his foot condition. *Id.* ¶ 54. Mr. Michalski had filed the state habeas petition in February 2017. *Id.* At the hearing, the judge ordered the Department of Correction to permit him to buy quality footwear from the "community." *Id.*

5

The Complaint asserts that the court subsequently ordered that Mr. Michalski receive the footwear. *Id.* The special footwear provided Mr. Michalski with the support and comfort that he needed for the condition affecting his feet. *Id.* ¶ 55. Mr. Michalski claims, however, that he only wears his shoes for two hours each day. *Id.* When he is not wearing the shoes, he allegedly experiences stiffening of his feet, atrophy of his leg muscles, and swelling and pain in his arches and the bones of his feet. *Id.* ¶ 57.

In August 2017, Mr. Michalski allegedly submitted a grievance because he was experiencing severe foot pain and was sometimes unable to walk. *Id.* ¶ 58. On September 6, 2017, Dr. Ruiz allegedly met with Mr. Michalski. *Id.* ¶ 59. Dr. Ruiz allegedly stated that surgery for the conditions affecting his feet would make his conditions worse. *Id.* The Complaint asserts that when Mr. Michalski indicated that Dr. Berkowitz had refused to examine or treat him, Dr. Ruiz simply stated "we're good here" and offered no further treatment to Mr. Michalski. *Id.* ¶ 59.

Mr. Michalski has sued Defendants in both their individual and official capacities. He seeks injunctive and declaratory relief and monetary damages.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), the Court must review civil complaints filed by incarcerated persons against governmental actors and "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.*

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed allegations are not required, "a complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts have an obligation to interpret "a *pro se* complaint liberally," a complaint must still include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

### III. DISCUSSION

#### A. Official Capacity Claims

Mr. Michalski seeks punitive and compensatory damages. The request for monetary damages against Defendants in their official capacities are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[T]o establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." (citations omitted)); *Quern v. Jordan*, 440 U.S. 332, 338 (1979) (recognizing that in "a [42 U.S.C.] § 1983 action . . . a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief

7

and may not include a retroactive award which requires the payment of funds from the state treasury" (citations omitted)).

All such claims against Defendants are dismissed under 28 U.S.C. § 1915A(b)(2) and only claims against Defendants in their personal capacities seeking money damages may proceed.

B.     **Eighth Amendment Claims – Individual and Official Capacity Claims**

Mr. Michalski contends that Defendants were deliberately indifferent to his serious foot conditions. He seeks (1) monetary damages from Defendants in their individual capacities; (2) a declaratory judgment against Defendants in their official capacities indicating that they violated his Eighth Amendment rights; (3) and injunctive relief against Defendants in their official capacities in the form of an order that they provide him with medical treatment for his conditions.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Although the Constitution does not require "comfortable" prison conditions, the Eighth Amendment imposes certain duties on prison officials, to 'ensure that inmates receive adequate food, clothing, shelter and medical care" and are confined in "safe[]" living conditions. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (internal quotation marks and citations omitted).

The Supreme Court has held that deliberate indifference by prison officials to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim for deliberate indifference to a serious medical need, a plaintiff must satisfy a two-part test. Under the first part, a plaintiff must demonstrate that the plaintiff's medical need was "sufficiently serious."

8

*Salahuddin v Goord*, 467 F.3d 263, 279 (2d Cir. 2011). Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quotation marks omitted).

Mr. Michalski has alleged that he suffers from at least two conditions that cause severe and chronic pain to his feet. These painful conditions also make it difficult for him to walk and have interfered with his ability to sleep. Mr. Michalski has plausibly alleged that he suffers from several serious medical conditions.

Defendant must also have actually been aware of a substantial risk that the inmate would suffer serious harm as a result of the defendant's actions or inactions. *Salahuddin*, 467 F.3d at 279–80. Mere negligent conduct does not constitute deliberate indifference. *Id.* at 280 ("[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent."); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (noting that medical malpractice alone does not amount to deliberate indifference).

Mr. Michalski alleges that in response to his repeated complaints of severe pain in his feet, there was a four-month delay before he met with Dr. Ruiz. When Dr. Ruiz did finally meet with Mr. Michalski, he allegedly did not examine Mr. Michalski or otherwise treat Mr. Michalski's painful foot conditions. Two months later, Dr. Ruiz allegedly listened to Mr. Michalski's complaints and the history of his foot conditions and submitted a request to the URC for shoe inserts. Although the URC approved the request for inserts, Dr. Ruiz allegedly insisted on ordering inserts that were too big for Mr. Michalski's feet. In early September 2017, Dr. Ruiz

9

saw Mr. Michalski due to Mr. Michalski's complaints of foot pain, but allegedly provided no treatment to alleviate Mr. Michalski's symptoms.

Dr. Berkowitz allegedly met with Mr. Michalski in June 2017, but did not examine him, discuss or assess his symptoms or order x-rays. Instead, he initially insisted that Mr. Michalski undergo steroid injections. After hearing that Mr. Michalski's current level of pain was not severe, Dr. Berkowitz allegedly indicated that steroid injections were not warranted. Dr. Berkowitz allegedly offered no other treatment for Mr. Michalski's chronic foot pain.

These allegations, that Dr. Ruiz never examined Mr. Michalski and either provided treatment that was not medically appropriate for Mr. Michalski's conditions or did not offer any treatment for Mr. Michalski's conditions, state a plausible claim of deliberate indifference to a serious medical need. In addition, Mr. Michalski's claim that Dr. Berkowitz did not examine or assess his conditions, x-ray his feet, or offer any treatment to alleviate the pain in Mr. Michalski's feet states a plausible claim of deliberate indifference to medical needs by Dr. Berkowitz. *See Stevens v. Goord*, 535 F. Supp. 2d 373, 388 (S.D.N.Y. 2008) ("While disagreements regarding choice of treatment are generally not actionable under the Eighth Amendment, judgments that have no sound medical basis, contravene professional norms, and appear designed simply to justify an easier course of treatment (in this case, no treatment) may provide the basis of a claim."); *McKenna v. Wright*, No. 01-cv-6571 (WK), 2002 WL 338375, at *8 (S.D.N.Y. Mar. 4, 2002) (acknowledging that "a plaintiff may be able to state an Eighth Amendment claim where a doctor acts without medical justification") (citation omitted)). The Eighth Amendment claims of deliberate indifference to medical needs will proceed against both Drs. Ruiz and Berkowitz in their individual capacities, to the extent that he seeks money damages and in their official capacities as to his claims for injunctive and declaratory relief.

### C. Motions for Review, Articulation and for Service

Mr. Michalski asks the Court to review the Complaint and issue an order that it be served on Defendants. The Court has completed its initial review of the Complaint and has determined that the Complaint should proceed against both defendants in their individual and official capacities. Because the Court has granted Mr. Michalski leave to proceed *in forma pauperis* under 28 U.S.C. § 1915, the Court will direct the Clerk of the Court to effect service of the Complaint on Defendants in their individual capacities and direct the United States Marshal's Service to effect service of the Complaint on Defendants in their official capacities.

Accordingly, the motions for judicial review, for articulation and to commence service are denied.

## IV. CONCLUSION

For the reasons discussed above, Mr. Michalski's claims seeking money damages from Defendants in their official capacities are **DISMISSED** under 28 U.S.C. § 1915A(b)(2), but he may seek damages against them in the personal capacities.

The Eighth Amendment claims of deliberate indifference to medical needs will proceed against Drs. Ricardo Ruiz and Samuel Berkowitz in their individual capacities and official capacities to the extent that Mr. Michalski seeks injunctive and declaratory relief.

The motion for review, motion for articulation, and motion to proceed and commence service are **DENIED**.

Within twenty-one (21) days of this Order, the Clerk of the Court shall prepare a summons form and send an official capacity service packet to the U.S. Marshal's Service. The U.S. Marshals Service shall serve the summons, a copy of the Complaint and this Order on Defendants Dr. Ricardo Ruiz and Dr. Samuel Berkowitz in their official capacities by delivering

the necessary documents in person to the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141.

Within twenty-one (21) days of this Order, the Clerk of the Court shall ascertain from the Department of Correction Office of Legal Affairs the current work addresses for each Defendant and mail a copy of the Complaint, this Order and a waiver of service of process request packet to each Defendant in his or her individual capacity at his or her current work address. On the thirty-fifth (35th) day after mailing, the Clerk of the Court shall report to the Court on the status of each request. If any Defendant fails to return the waiver request, the Clerk of the Court shall make arrangements for in-person service by the U.S. Marshals Service and the Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

Defendants shall file their response to the Complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If Defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

Discovery, under the Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this Order. Discovery requests need not be filed with the court.

All motions for summary judgment shall be filed within seven months (210 days) from the date of this Order.

The *Pro Se* Prisoner Litigation Office shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

**SO ORDERED** at Bridgeport, Connecticut, this 12th day of June, 2018.

          /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE