UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARCO A. MICHALSKI,
    *Plaintiff*,

v.

RICARDO RUIZ & SAMUEL
BURKOWITZ,
    *Defendants*.

No. 3:17-cv-1516 (VAB)

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

Marco Michalski ("Plaintiff"), incarcerated at the Osborn Correctional Institution ("Osborn") and proceeding *pro se*, filed a Complaint under 42 U.S.C. § 1983, alleging that Drs. Ricardo Ruiz and Samuel Berkowitz (collectively "Defendants") failed to provide him with medical treatment in violation of his rights under the Eighth Amendment to the U.S. Constitution. Defendants have moved for summary judgment.

For the following reasons, Defendants' motion for summary judgment is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations[1]

Mr. Michalski has a history of foot issues relating to clubfeet predating his incarceration. *See* Pl.'s Ex. 2, ECF No. 62-3 at 14-18 (Apr. 30, 2019) (Scott Green, Orthopedic Assocs. of

---

[1] The District of Connecticut's Local Rule 56(a) requires that a non-moving party's Statement of Material Facts in Opposition to Summary Judgment "shall include . . . a response to each paragraph admitting or denying the fact and/or objecting to the fact as permitted by Federal Rule of Civil Procedure 56(c)." D. Conn. L. Civ. R. 56(a)2(i). Furthermore, "[e]ach denial . . . must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial." *Id.* 56(a)3. "When a party fails to appropriately deny material facts set forth in the movant's Rule 56(a)(1) statement, those facts are deemed admitted." *SEC v. Global Telecom Servs. L.L.C.*, 325 F. Supp. 2d 94, 109 (D. Conn. 2004).

To the extent that Mr. Michalski's Rule 56(a)2 Statement of Material Facts fails to comply with Local Rule 56(a)2 and (a)3 and fails to point to evidence in the record, this Court deems the corresponding facts in the Defendant's

1

Windham Cty. (notes regarding evaluations of Mr. Michalski in 2000 and 2001)). When Mr. Michalski was fifteen years old, a physician evaluating him noted that "[h]e's had problems and pain with his feet and ankles for his entire 15 year life," and recommended medications including Tylenol and Ibuprofen as well as physical therapy. *Id.* at 17 (entry date July 26, 2001). He also noted that "Marco may ultimately require some surgical procedures to realign his foot when he is fully grown." *Id.*

In late 2016, Mr. Michalski sought medical attention for foot issues while incarcerated at Cheshire Correctional Institute ("Cheshire"). *See* Statement of Material Facts ¶ 1, ECF No. 60-12 (Apr. 22, 2019) ("Defs.' SOMF"); Pl.'s Ex. 4, ECF No. 62-3 at 23 (Inmate Request Form, Conn. Dep't of Corr. (Jan. 2, 2017)); Pl.'s Ex. 8, ECF No. 62-3 at 32 (Inmate Request Form, Conn. Dep't of Corr. (Dec. 27, 2016)). Since being incarcerated but before the events underlying this lawsuit, Mr. Michalski had requested to be seen by a specialist in podiatry for his foot issues at least once, in October 2010. Pl.'s Ex. 1, ECF No. 62-3 at 10 (Apr. 30, 2019) (Clinical Record, Univ. of Conn. Health Ctr. Corr. Managed Health Care (entry date Oct. 1, 2010)).

Between January and May 2017, Mr. Michalski submitted multiple Inmate Request Forms and Administrative Remedy Forms complaining that he had not been seen for his foot issues or that his issues had not been adequately addressed. *See* Pl.'s Ex. 8, ECF No. 62-3 at 32-48 (Inmate Request Forms and Inmate Admin. Remedy Forms, Conn. Dep't of Corr. (Dec. 27, 2016 through May 2, 2017)). Each form was acknowledged with notes stating what follow up Mr. Michalski had received or would receive. *Id.*

On January 22, 2017, Mr. Michalski's clinical record noted that he had stated "he was unable to address the issue of his remedy (feet) when last meeting with the M.D." Defs.' Ex. A,

---

Local Rule 56(a)1 Statement to be admitted for purposes of this motion, where those asserted facts are supported by admissible evidence. The Court will not rely on assertions that are unsupported by admissible evidence in the record.

ECF No. 52 (Clinical Record, Univ. of Conn. Health Ctr. Corr. Managed Health Care (entry date Jan. 22, 2017)).

On March 1, 2017, Mr. Michalski was seen by Dr. Ruiz, a physician employed by the Department of Correction, who noted that he had "chronic Pedis Planus." Defs.' SOMF ¶ 3; Defs.' Ex. A, ECF No. 52 (Clinical Record, Univ. of Conn. Health Ctr. Corr. Managed Health Care (entry date Mar. 1, 2017)); Ruiz Decl. ¶ 2-3, ECF No. 65-1 (May 16, 2019). Dr. Ruiz noted that he would make a Utilization Review Request for podiatry. Defs.' SOMF ¶ 5.

On March 10, 2017, the Utilization Review Committee approved Mr. Michalski's request for shoe inserts. Defs.' Ex. F, ECF No. 57 (UR Request Response, Univ. of Conn. Health Ctr. Corr. Managed Health Care (Mar. 10, 2017)).

On March 23, 2017, insoles arranged for by Dr. Ruiz were issued to Mr. Michalski. Defs.' SOMF ¶ 6; Defs.' Ex. F, ECF No. 57 (Consultation Form, Univ. of Conn. Health Ctr. Corr. Managed Health Care (Mar. 23, 2017)).

On April 26, 2017, Dr. Ruiz made another Utilization Review Request. Defs.' SOMF ¶ 7. In the request, Dr. Ruiz stated that Mr. Michalski had a "history of pedis planus which had required bilateral steroid injections (pre-DOC)" and "a history of congenital Clubfoot which was treated with shoes (no surgery casting)." Defs.' Ex. B, ECF No. 53 (UR Request Response, Univ. of Conn. Health Ctr. Corr. Managed Health Care (Apr. 26, 2017)). Dr. Ruiz also stated that Mr. Michalski "recently had shoe inserts given to him without relief" and "request[ed] a podiatry evaluation for a possible steroid injection." *Id.*

On May 4, 2017, the Utilization Review Committee approved Dr. Ruiz's request for a podiatry consult. Defs.' Ex. D, ECF No. 55 at 3 (UR Request Response, Univ. of Conn. Health Ctr. Corr. Managed Health Care (May 4, 2017)).

On June 5, 2017, Dr. Berkowitz examined Mr. Michalski at the University of Connecticut Hospital. *Id.* at 2 (Consultation Form, Univ. of Conn. Health Ctr. Corr. Managed Health Care (June 5, 2017)); Defs.' SOMF ¶ 9-10; Defs.' Ex. E, ECF No. 56 (Clinical Record, UConn Health (June 5, 2017)). Dr. Berkowitz found that while "Marco presents with a history of clubfoot as a child" and "complains today of 'tightness' of his right foot with intermittent pain that can be disabling," his "impression is that Marco is normal on examination" and that he "may be having attacks of gout." Pl.'s Ex. 5, ECF No. 62-3 at 25 (Medical Note, UConn Health Corr. Managed Health Care (June 5, 2017)); Berkowitz Decl. ¶ 4, ECF No. 67 (July 2, 2019). He found that Mr. Michalski "does not require follow up." *Id.*

On June 13, 2017, Mr. Michalski's clinical record notes that upon direction from Mary Ellen Castro, the Director of Health Services, an order would be placed for outside community footwear. Michalski Decl. ¶ 24, ECF No. 62-3 at 5 (Apr. 30, 2019); Pl.'s Ex. 3, ECF No. 62-3 at 20 (Clinical Record, Univ. of Conn. Corr. Managed Health Care (entry date June 13, 2017)).

On February 12, 2018, Dr. Berkowitz examined Mr. Michalski and found that he "presents with a protracted history of primarily right foot pain" and a "history of clubfoot treated successfully with shoe." Defs.' Ex. G, ECF No. 58 (Medical Note, UConn Health Corr. Managed Health Care (Feb. 13, 2018)). Dr. Berkowitz noted that a report dated October 11, 2017, had found Mr. Michalski's feet as "being within normal limits," but now recommended "a corticosteroid injection." *Id.*

On April 23, 2018, Dr. Berkowitz examined Mr. Michalski again, stating that "[t]his is a follow up visit apparently. . . . I do not have the note from my previous visit." Def.'s Ex. H, ECF No. 59 (Medical Note, UConn Health Center Corr. Managed Health Care (Apr. 23, 2018)). Mr. Michalski stated that he had pain in both arches and that he wanted injections. *Id.* But this time

4

Dr. Berkowitz stated that his "impression is that Marco has bilateral plantar fasciitis," which is "not amenable to corticosteroid injection," and instead "recommended plantar fascia stretching." *Id.* He stated that Mr. Michalski did not require follow up. *Id.*

### B. Procedural History

On September 8, 2017, Mr. Michalski, while incarcerated at Cheshire, filed a Complaint against Drs. Ruiz and Berkowitz.[2] Compl., ECF No. 1 (Sept. 8, 2017). He alleged that Defendants were deliberately indifferent to his medical needs in violation of his rights under the Eighth Amendment because they failed to provide him medical treatment for clubfeet. *Id.*

On March 29, 2018, Mr. Michalski was transferred to Osborn. Notice of Change of Address, ECF No. 10 (Apr. 9, 2018).

On June 12, 2018, the Court issued an Initial Review Order permitting Mr. Michalski's deliberate indifference claims to proceed against Defendants in their individual and official capacities for injunctive and declaratory relief, and against Defendants in their individual capacities for damages. Initial Rev. Order, ECF No. 13 (June 12, 2018).

On April 22, 2019, Defendants moved for summary judgment. Mot. Summ. J., ECF No. 60 (Apr. 22, 2019). In support of their motion, Defendants submitted a memorandum of law, a statement of material fact, declarations of each Defendant, and eight exhibits under seal which related to Mr. Michalski's medical care. Mem. Summ. J., ECF No. 60-1 (Apr. 22, 2019) ("Defs.' Mem."); Statement of Material Facts, ECF No. 60-12 (Apr. 22, 2019) ("Defs.' SOMF"); Ruiz

---

[2] Defendant's name is spelled "Burkowitz" in the case caption and sometimes in filings, but is spelled "Berkowitz" in other places, including his Declaration. The Court will use "Berkowitz" everywhere except the case caption, since the Defendant himself appears to use that spelling.

Decl., ECF No. 65-1 (May 16, 2019); Berkowitz Decl., ECF No. 67 (July 2, 2019); Defs.' Exs. A-H, ECF Nos. 52-59 (Apr. 22, 2019).

On April 30, 2019, Mr. Michalski filed an opposition to the motion for summary judgment. Opp'n to Summ. J., ECF No. 62 (Apr. 30, 2019). In support of his opposition, Mr. Michalski filed a memorandum of law, a statement of material fact, a declaration, and ten exhibits relating to his medical care. Mem. in Supp. of Opp'n to Summ. J., ECF No. 62-2 (Apr. 30, 2019) ("Pl.'s Mem."); Statement of Disputed Factual Issues, ECF No. 62-1 (Apr. 30, 2019) ("Pl.'s SOMF"); Michalski Decl., ECF No. 62-3 at 1-8 (Apr. 30, 2019); Pl.'s Exs. 1-10, ECF No. 62-3 at 9-55 (Apr. 30, 2019).

## II. STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in the original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.

1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of N.Y.*, 874 F.3d 338, 343 (2d Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'"). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *see Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011),

and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

## III. DISCUSSION

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, which includes punishments that "involve the unnecessary and wanton infliction of pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Gregg v. Georgia,* 428 U.S. 153, 173 (1976)). Although the Constitution does not require "comfortable" prison conditions, the Eighth Amendment imposes certain duties on prison officials, to "ensure that inmates receive adequate food, clothing, shelter and medical care" and are confined in "safe[]" living conditions. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation marks and citations omitted).

The Supreme Court and the Second Circuit have held that deliberate indifference by prison officials to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Chance*, 143 F.3d at 702. However, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle,* 429 U.S. at 106.

To establish a Section 1983 claim for deliberate indifference to a serious medical or dental need, a plaintiff must show that he meets a two-pronged test, requiring an analysis of the claim both objectively and subjectively.

Under the objective prong, the plaintiff's medical need or condition must be "a serious one." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). A medical condition may not initially

be serious, but may become serious because it is degenerative, and if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000). Factors relevant to the seriousness of a medical or dental condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted).

Under the subjective prong, the action or inaction of a prison official, medical staff member, or dental provider must have constituted recklessness. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006). The official must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions. *Id.* at 280. Mere negligent conduct does not constitute deliberate indifference. *See id.* ("[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent."); *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003) (stating that medical malpractice alone does not amount to deliberate indifference).

Defendants argue that because Mr. Michalski's "feet have been consistently found to be normal and/or not requiring medical follow up," he cannot show that his foot issues constitute serious medical need. Def.'s Mem. at 7.

Mr. Michalski argues that he has shown he has a serious medical condition by showing that he has experienced serious pain associated with his feet for a long time, that doctors including Defendants have commented on his foot issues, and that his condition affects his daily activities. Pl.'s Mem. at 5-9.

The Court agrees.

9

Courts have found that conditions which cause chronic pain can amount to a serious medical need, especially when such pain has persisted for an extended period of time. *See Smalls v. Wright*, No. 3:16-cv-02006 (JCH), 2018 WL 3581695, at *3 (D. Conn. July 25, 2018) (finding that a plaintiff who repeatedly complained of severe back pain raised a genuine issue of material fact as to whether his back injury qualified as a serious medical need); *Rosario v. Anson*, No. 9:12-cv-1506 BKS/CFH, 2015 WL 5692550, at *10 (N.D.N.Y. Sept. 28, 2015) (finding that an incarcerated plaintiff "ha[d] demonstrated a material question of fact as to whether his knee pain significantly affected his daily activities and caused him chronic and substantial pain."); *Benjamin v. Kooi*, No. 9:07-cv-0506, 2010 WL 985844, at *7 (N.D.N.Y. Feb. 25, 2010), *report and recommendation adopted*, No. 9:07-cv-0506 (LEK/DRH), 2010 WL 985823 (N.D.N.Y. Mar. 17, 2010) ("Depending upon the facts presented, severe back pain, especially if lasting an extended period of time, and migraine headaches may qualify as 'serious medical needs' under the Eighth Amendment." (internal citations omitted)); *Faraday v. Lantz*, No. 3:03-cv-1520 (SRU), 2005 WL 3465846, at *5 (D. Conn. Dec. 12, 2005) (finding that persistent complaints of "lower back pain caused by herniated, migrated discs [and] sciatica" causing severe pain constitutes a serious medical need).

Mr. Michalski has established a genuine issue of material fact as to whether his foot issues constitute a serious medical need. He has presented evidence that he has experienced pain relating to his feet since at least age 15, Pl.'s Ex. 2, ECF No. 62-3 at 14-18 (Apr. 30, 2019) (Scott Green, Orthopedic Assocs. of Windham Cty. (notes regarding evaluations of Mr. Michalski in 2000 and 2001)), and that he complained of pain in his feet while incarcerated beginning in late 2016, Pl.'s Ex. 4, ECF No. 62-3 at 23 (Inmate Request Form, Conn. Dep't of Corr. (Jan. 2, 2017)); Pl.'s Ex. 8, ECF No. 62-3 at 32 (Inmate Request Form, Conn. Dep't of Corr. (Dec. 27,

2016)). Mr. Michalski stated in his medical requests that his foot pain was interfering with his ability to walk and to get up and down from his bunk. *See* Pl.'s Ex. 8, ECF No. 62-3 at 34-36, 39, 41-43 (Inmate Request Forms, Conn. Dep't of Corr. (Feb. 10, 2017, Feb. 12, 2017, Feb. 21, 2017, Mar. 28, 2017, Mar. 30, 2017, May 2, 2017)). Health care providers, including Drs. Ruiz and Berkowitz, commented on and took actions to relieve Mr. Michalski's pain in 2017 and 2018, including obtaining inserts for Mr. Michalski. *See, e.g.*, Defs.' Ex. A, ECF No. 52 (Clinical Record, Univ. of Conn. Health Ctr. Corr. Managed Health Care (entry date Mar. 1, 2017)); Defs.' Ex. F, ECF No. 57 (Consultation Form, Univ. of Conn. Health Ctr. Corr. Managed Health Care (Mar. 23, 2017)); Defs.' Ex. B, ECF No. 53 (UR Request Response, Univ. of Conn. Health Ctr. Corr. Managed Health Care (Apr. 26, 2017)); Defs.' Ex. D, ECF No. 55 at 2 (Consultation Form, Univ. of Conn. Health Ctr. Corr. Managed Health Care (June 5, 2017)); Pl.'s Ex. 5, ECF No. 62-3 at 25 (Medical Note, UConn Health Corr. Managed Health Care (June 5, 2017)); Pl.'s Ex. 3, ECF No. 62-3 at 20 (Clinical Record, Univ. of Conn. Corr. Managed Health Care (entry date June 13, 2017)); Defs.' Ex. G, ECF No. 58 (Medical Note, UConn Health Corr. Managed Health Care (Feb. 13, 2018)); Def.'s Ex. H, ECF No. 59 (Medical Note, UConn Health Center Corr. Managed Health Care (Apr. 23, 2018)). This is sufficient evidence to create a genuine issue of material fact regarding the seriousness of Mr. Michalski's medical condition.

As to the subjective element, Defendants argue that each Defendant met with and examined Mr. Michalski on multiple occasions and took actions to address his foot issues, and that they "were doing everything within their power to assist that plaintiff." Def.'s Mem. at 8-9. They argue that their conduct "in no way evidences the type of conduct illustrative of deliberate indifference to the needs of the plaintiff." *Id.*

Mr. Michalski argues that Defendants gave him improper treatment and "failed to inquire into essential facts that are necessary to make a professional judgment," for example recording "numerous 'impressions,' yet fail[ing] to investigate to determine if those impressions were accurate" by offering any testing. Pl.'s Mem. at 11.

The Court disagrees.

"It is well-established that mere disagreement over the proper treatment does not create a constitutional claim." *Chance*, 143 F.3d at 703. Additionally, "[t]he plaintiff's own opinions about proper diagnosis and treatment are not admissible evidence and do not create a genuine dispute of fact." *Morales-Rojas v. Ruiz*, No. 3:17-cv-1434 (MPS), 2019 WL 1025245, at *6 (D. Conn. Mar. 4, 2019); *see also Fuller v. Lantz*, 549 F. App'x 18, 20 (2d Cir. 2013) (finding that affidavits of an incarcerated plaintiff and her acquaintances, none of whom were medical professionals, were "insufficient to create a genuine dispute of fact as to the propriety of a medical diagnosis").

A plaintiff must show that the defendant acted or failed to act with "culpable recklessness," or "a conscious disregard of a substantial risk of serious harm." *Id.* (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). A defendant therefore must have been "actually aware of a substantial risk that serious inmate harm would result." *Salahuddin*, 467 F.3d at 280.

In a similar case, another court in this district granted summary judgment to defendants because the plaintiff had not presented any "evidence that the evaluation and diagnosis of his foot condition by Dr. Berkowitz . . ." or "the treatment by Dr. Ruiz . . . constituted 'a conscious disregard of a substantial risk of serious harm' to the condition of his left foot such that it rose to the level of 'culpable recklessness.'" *Morales-Rojas*, 2019 WL 1025245, at *7; *see also Daniels*

*v. Murphy*, No. 3:11-cv-00286 (SRU), 2014 WL 3547235, at *7, *9 (D. Conn. July 17, 2014) ("The claim that Dr. Wright did not provide Daniels with his requested treatment [an ankle foot orthotic] does not constitute deliberate indifference on the part of Dr. Wright, but rather Daniels' disagreement with Dr. Wright's diagnosis of the severity of the conditions and treatment of those conditions. Such a claim is not cognizable under the Eighth Amendment."); *Davidson v. Scully*, 155 F. Supp. 2d 77, 84 (S.D.N.Y. 2001) (finding that an incarcerated plaintiff's allegations that "DOCS did not properly treat him because DOCS denied him particular orthopedic shoes, orthotics, and surgery, which he claims are necessary to treat his podiatric problems," constituted a disagreement about the type of treatment that the inmate believed he should receive and did not rise to the level of an Eighth Amendment claim that DOCS was deliberately indifferent to his podiatric problems).

Mr. Michalski has not provided any evidence, beyond his own assertions, that the diagnoses and treatment offered by Defendants were not based on sound medical judgment, or that they acted with conscious disregard of serious risk of harm to Mr. Michalski.[3] Indeed, the evidence shows that Defendants repeatedly acted to try to alleviate Mr. Michalski's pain by arranging for multiple podiatry consults, providing shoe inserts, and finally by prescribing plantar fascia stretching. Defs.' Ex. A, ECF No. 52 (Clinical Record, Univ. of Conn. Health Ctr. Corr. Managed Health Care (entry date Mar. 1, 2017)); Defs.' Ex. F, ECF No. 57 (UR Request Response, Univ. of Conn. Health Ctr. Corr. Managed Health Care (Mar. 10, 2017)); Defs.' Ex. F, ECF No. 57 (Consultation Form, Univ. of Conn. Health Ctr. Corr. Managed Health Care (Mar.

---

[3] To the extent that Mr. Michalski's deliberate indifference claim is based on delay of his treatment, he does not present any evidence that the delay between his initial request for treatment in late 2016 and the issuance of insoles in March 2017—or any other treatment— worsened his foot condition or increased his risk of harm. *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003) (when deliberate indifference is based on delay, courts consider the reason for the delay and whether the delay worsened plaintiff's condition or increased his risk of harm (citing *Chance*, 143 F.3d at 702-03)).

23, 2017)); Defs.' Ex. B, ECF No. 53 (UR Request Response, Univ. of Conn. Health Ctr. Corr. Managed Health Care (Apr. 26, 2017)); Defs.' Ex. D, ECF No. 55 at 3 (UR Request Response, Univ. of Conn. Health Ctr. Corr. Managed Health Care (May 4, 2017)); *Id.* at 2 (Consultation Form, Univ. of Conn. Health Ctr. Corr. Managed Health Care (June 5, 2017)); Defs.' Ex. E, ECF No. 56 (Clinical Record, UConn Health (June 5, 2017)); Pl.'s Ex. 3, ECF No. 62-3 at 20 (Clinical Record, Univ. of Conn. Corr. Managed Health Care (entry date June 13, 2017)); Defs.' Ex. G, ECF No. 58 (Medical Note, UConn Health Corr. Managed Health Care (Feb. 13, 2018)); Def.'s Ex. H, ECF No. 59 (Medical Note, UConn Health Center Corr. Managed Health Care (Apr. 23, 2018)).

On this record, therefore, Mr. Michalski cannot establish a genuine issue of material fact as to whether Dr. Ruiz or Dr. Berkowitz was deliberately indifferent to his medical needs.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED.**

The Clerk of the Court is respectfully directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 31st day of January, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE